**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** } } } | |
| } | **CIVIL ACTION NO.** |
| **Plaintiff,** } | |
| } | |
| **v.** } | **COMPLAINT AND** |
| } | **JURY TRIAL DEMAND** |
| **KLLM TRANSPORT SERVICES LLC and** } | |
| **KLLM DRIVING ACADEMY, INC.,** } | |
| } | |
| **Defendants.** } | |
| } | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Sonya Brookins ("Brookins") and a class of presently identified and unidentified aggrieved female job applicants and employees who were adversely affected by such practices.

As alleged with greater particularity in Paragraphs 19-86 below, from at least October 28, 2021 until November 29, 2021, Defendant KLLM Transport Service LLC and its subsidiary Defendant KLLM Driving Academy Inc. (collectively, "Defendants") subjected Sonya Brookins to discriminatory terms and conditions of employment by delaying her training because of her sex. Additionally, since at least January 2021, Defendants have engaged in, and continue to engage in, unlawful disparate treatment of female student drivers. Defendants imposed an intentionally sex-discriminatory trainer assignment practice that allowed male trainers to refuse to train female student drivers because of their sex. Defendants adopted and implemented the overtly sex-based training assignment preferences of trainers, as well as student drivers, without eliciting the reasons

1

for those preferences, and to the extent implicated, without implementing available alternatives that would not have required opposite-sex training pairs to share a truck sleeper berth. Defendants have also maintained a sex-discriminatory compensation policy that denied pay to female student drivers who indicated a preference for a female trainer while not denying pay to male student drivers who indicated a sex-based trainer preference or other student drivers who state other trainer preferences. Finally, Defendants implemented a sex-discriminatory policy requiring female student drivers to certify that they notified their spouse and/or partner that they have opted to potentially be trained by a male trainer while not requiring male student drivers to do the same.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      Venue is proper in the United States District Court for the Northern District of Texas, Dallas Division under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were and are now being committed in the State of Texas (Dallas County) and within this judicial district, as well as other locations in the United States.

## PARTIES

3.      Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      Defendant KLLM Transport Services LLC, a Mississippi limited liability company, maintains terminal and office facilities and has otherwise continuously been doing business in the State of Texas, as well as other states.

5.      Defendant KLLM Driving Academy Inc., a Texas corporation, is a wholly-owned subsidiary of Defendant KLLM Transport Services LLC and operates driving academies in Lancaster, Texas and Jackson, Mississippi.

6.      At all relevant times, each Defendant has been and continues to be an "employer" within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b), and have operated, and they continue to operate, as a single employer/integrated enterprise. In this regard, Defendants have maintained, and they continue to maintain, interrelated operations, common management, centralized control of labor relations, and common ownership or financial control.

a.   Defendants' operations are interrelated. Defendants shared employees and services including accounting and bookkeeping with centrally maintained books.

b.   Defendants have centralized control of labor relations. KLLM Transport Services LLC officers, including the Chief Executive Officer and Vice President of Driver Resources, provide strategic-level decision-making for KLLM Driver Academy Inc. and the Vice President of Driver Resources further has responsibility for making recruitment, hiring and retention decisions concerning all employees and job applicants who were student drivers at KLLM Driver Academy Inc.

c.   Defendants share common management. KLLM Transport Services LLC employees managed the recruitment, hiring, retention, and training of student drivers attending KLLM Driver Academy Inc.'s driving academies.

d. KLLM Driving Academy Inc. is the wholly-owned subsidiary of KLLM Transport Services LLC and maintains common ownership and financial control.

7. At all relevant times, KLLM Transport Services LLC has continuously had at least fifteen (15) employees.

8. At all relevant times, Defendants collectively have continuously had at least fifteen (15) employees.

9. KLLM Transport Services LLC employed more than five hundred (500) employees for at least twenty (20) weeks in 2020, 2021, 2022, 2023, 2024, and 2025.

10. Defendants collectively employed more than five hundred (500) employees for at least twenty (20) weeks in 2020, 2021, 2022, 2023, 2024, and 2025.

11. At all relevant times, Defendants have continuously been doing business in the State of Texas.

12. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

13. On October 21, 2021, more than thirty days prior to the institution of this lawsuit, Sonya Brookins filed an administrative charge of discrimination, Charge No. 450-2022-03841, with the EEOC alleging violations of Title VII by Defendants.

14. On February 19, 2025, EEOC issued to Defendants an administrative Determination finding reasonable cause to believe that Defendants violated Title VII by delaying Brookins's placement with a driver trainer because of her sex, female; implementing a written policy that denied pay to female student drivers that elected to be trained by a female trainer;

implementing a written policy requiring female student drivers who were willing to be trained by a male trainer to notify their spouse or significant other of their willingness to be trained by a male trainer; and by allowing male trainers to refuse to train female student drivers. In this same administrative Determination, EEOC invited Defendants to join in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

16. EEOC engaged in communications with Defendants to provide them the opportunity to remedy the discriminatory practices described in administrative Determination by informing Defendants of the remedies sought by the Commission.

16. EEOC was unable to secure a conciliation agreement acceptable to EEOC from Defendants.

17. On May 5, 2025, EEOC issued to Defendants a Notice of Failure of Conciliation, advising Defendants that EEOC was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

**<u>STATEMENT OF FACTS</u>**

19. At all relevant times, Defendants have trained truck driving applicants in driving academies located in Lancaster, Texas and Jackson, Mississippi. The driving academy curriculum consists of classroom training.

20. Upon completion of the driving academy classroom training, Defendants made conditional offers of employment to, or in the alternative, hired, the job applicants, who then became eligible for on-the-road training. (Hereinafter, Defendants' job applicants who received conditional offers of employment and were/are awaiting on-the-road training, or in the alternative,

5

employees who were hired by Defendants as drivers and were/are awaiting on-the-road training, are referred to as "student drivers.")

21.     Before Defendants' student drivers are permitted to commence their regular job duties operating Defendants' trucks as drivers, they must first successfully complete the aforementioned on-the-road training.

22.     On-the-road training requires that Defendants' student drivers be paired with a trainer to complete a certain number of driving hours, which took approximately six weeks to complete.

23.     Before on-the-road training begins, student drivers fill out a preference form indicating whether they would like to be paired with a trainer who was a male or female and smoker or non-smoker. Student drivers could also indicate they had no preferences and wanted to be placed with the first available trainer. The student driver preference forms stated, "Female Students who elect to wait for a Female Trainer will not be compensated while they wait, if a Male Trainer is available."

24.     Since at least January 2021, Defendants have maintained and implemented a policy or practice of not paying compensation to female student drivers who stated a preference to be assigned to an on-the-road trainer of their same sex (female) while awaiting assignment to a trainer.

25.     In contrast, since at least January 2021, Defendants have maintained and implemented a policy or practice of paying compensation to male student drivers who stated a preference to be assigned to a male on-the-road trainer of their same sex (male) while awaiting assignment to a trainer.

26.     Defendants' preference forms for student drivers also stated, "Complete this section only if you are a Female Student willing to be placed with a Male Trainer: I certify that I have

notified my Spouse and/or significant other that I have volunteered to complete my training with a Trainer of the opposite sex." Below the aforementioned statement was a signature line for the female student driver to sign certifying their compliance with the statement.

27.    Since at least January 2021, Defendants have maintained and implemented a policy or practice of requiring female student drivers to certify to Defendants that they have notified their spouse or partner that they have volunteered or agreed to receive on-the-road training from an opposite-sex trainer or have not stated a trainer sex preference.

28.    Since at least January 2021, Defendants have enforced the above-described spousal or "significant other" certification policy against female student drivers that preferred to be trained by the first available trainer or a male trainer by requiring certification of notice to their spouses/partners of such preference.

29.    There was no comparable spousal notification certification for any male student drivers who selected the "first available" trainer option or who indicated a preference for a female trainer.

30.    Since at least January 2021, upon initial selection to become an on-the-road trainer in Defendants' driver training program, trainers were also asked to indicate their preferences whether they wanted to be paired with a student driver who was a male or female and smoker or non-smoker. Trainers could also indicate they had no preferences and wanted to be placed with the first available student driver.

31.    The aforementioned preferences of on-the-road trainers were communicated to Defendants' training managers, who would then assign student drivers and trainers for on-the-road training. Student drivers' on-the-road training commenced once an assignment was made.

32.    Defendants adopted and implemented the preferences stated by on-the-road trainers, including preferences to only train student drivers of their same sex, and did not require that trainers state their reasons for those preferences.

33.    Since at least January 2021, Defendants maintained a policy or practice of declining or refusing to assign female student drivers to male on-the-road trainers who indicated a preference to not train female student drivers.

34.    A substantial majority of Defendants' on-the-road trainers have been and are male.

35.    Absent a vehicle malfunction, Defendants required paired trainers and student drivers to sleep in the double bunk sleeper berth of the trainer's truck during on-the-road training, including when the trainers and student drivers were opposite sex.

36.    Rather than providing separate sleeping quarters for female student drivers and their male trainers, Defendants instead declined to pair female student drivers with male trainers who stated a preference to train only males.

37.    The practices identified in Paragraphs 32-36, above, created a pool of on-the-road trainers available to train female student drivers that was and is substantially smaller than the pool of on-the-road trainers available to train male student drivers because of overtly sex-based criteria.

38.    The practices identified in Paragraphs 32-36, above, caused female student drivers to wait longer than male student drivers to commence on-the-road training and to complete such training later because of overtly sex-based criteria.

39.    While in on-the-road training, student drivers received a lower rate of compensation as compared to their rate of compensation once training was complete.

40.    On October 28, 2021, Sonya Brookins, a resident of Dallas, Texas, completed Defendants' classroom driver academy course in Lancaster, Texas, and received a conditional

8

offer of employment as a student driver, or in the alternative, was hired as a student driver. At that time, she became eligible for placement with a trainer to begin on-the-road training.

41.     Brookins submitted a preference form indicating that she had no preference regarding either the sex or the smoker/non-smoker-status of the person to be assigned as her on-the-road trainer.

42.     While waiting for an on-the-road trainer assignment, Brookins regularly communicated about the status of her assignment via text messaging with Defendants' student services representative, who worked with the training managers making on-the-road trainer assignments and was responsible for keeping student drivers informed while awaiting a trainer assignment.

43.     In text messages, Brookins asked when she would be assigned an on-the-road trainer, and the student services representative responded by telling Brookins that Defendants were still waiting for an available trainer.

44.     Meanwhile, Defendants placed several similarly situated male student drivers who were hired at the same time or after Brookins with on-the-road trainers located in and around the state of Texas. Upon information and belief, the on-the-road trainers assigned to the male student drivers did not train female student drivers, or they rarely did so.

45.     It was not until November 29, 2021, after being on the waiting list for a month, that Brookins was finally offered an assignment with an on-the-road trainer. However, her offered assignment was with a trainer in Atlanta, Georgia—over 700 miles away from Lancaster, Texas, where Brookins lived and completed the driver academy.

46.     When Brookins asked student services representative why she was required to wait for an on-the-road trainer assignment, the student services representative told Brookins via a text

9

message, "[N]ot all males can train females. We have 22 females waiting for [a] trainer right now." When Brookins asked why male trainers could not train female student drivers, the student services representative stated, "They can, some just choose not to."

47.    On November 18, 2021, Candilyn McMillan, a female trainee who resides in White Oak, Texas, completed Defendants' classroom driver academy course in Lancaster, Texas, and received a conditional offer of employment as a student driver, or in the alternative, was hired as a student driver. At that time, she became eligible for placement with a trainer to begin on-the-road training.

48.    McMillan had no preference as to whether her trainer was male or female.

49.    Defendants' representative informed McMillan that Defendants required that McMillan's husband, who was another student driver at the time and also resides in White Oak, Texas, consent to her placement with a male on-the-road trainer before she could receive a trainer assignment.

50.    While McMillan waited for a trainer assignment, Defendants placed several male student drivers who were hired at the same time or after McMillan with on-the-road trainers in and around the state of Texas. Upon information and belief, the on-the-road trainers assigned to the male student drivers did not train female students, or they rarely did so.

51.    It was not until December 5, 2021, after being on the waiting list for two-and-one-half weeks, that McMillan was finally offered an assignment to an on-the-road trainer.

**COUNT ONE**
**SEX-DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT IN VIOLATION OF SECTION 703(a)(1) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(1)**
**(Charging Party Sonya Brookins)**

52.     The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

53.     From on or about October 28, 2021 until November 29, 2021, Defendants have engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Brookins to discriminatory terms and conditions of employment when they delayed assigning Brookins to on-the-road training because of her sex, female.

54.     The effect of the practices complained of above has been to deprive Sonya Brookins of equal employment opportunities and otherwise adversely affect her status as a job applicant, or in the alternative, as an employee because of her sex.

55.     The unlawful employment practices complained of above were intentional.

56.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Sonya Brookins.

**COUNT TWO**
**SEX DISCRIMINATION IN TRAINING ASSIGNMENTS IN VIOLATION OF SECTION 703(a)(1) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(1)**
**(Class of Aggrieved Female Job Applicants and Employees)**

57.     The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

58.     Since at least January 2021 and continuing to the present, Defendants have engaged in an unlawful, pattern or practice of sex discrimination in employment in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Brookins and a class of presently

identified and unidentified aggrieved female job applicants, or in the alternative, employees to discriminatory terms and conditions of employment because of their sex, female, through Defendants' policy and practice of making on-the-road trainer assignments based on the sex-based preferences of male trainers not to train female student drivers and of failing or refusing to assign female student drivers to male trainers because of the student drivers' sex, female.

59.    The effect of the unlawful employment practices complained of above adversely affects the status of Brookins and a class of presently identified and unidentified female student drivers as job applicants, or in the alternative, employees because of their sex.

60.    The unlawful employment practices complained of above were and are intentional.

61.    The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Brookins and a class of presently identified and unidentified female student drivers.

## COUNT THREE
### SEX DISCRIMINATION IN TRAINING ASSIGNMENTS IN VIOLATION OF SECTION 703(a)(2) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(2)
#### (Class of Aggrieved Female Job Applicants and Employees)

62.    The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

63.    Since at least January 2021 and continuing to the present, Defendants have engaged in an unlawful, pattern or practice of disparate treatment based on sex in employment in violation of Section 703(a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(2), by subjecting Brookins and a class of presently identified and unidentified aggrieved female job applicants, or in the alternative, employees to a limitation, segregation, and/or classification because of their sex, female, through Defendants' policy and practice of making on-the-road trainer assignments based on the sex-based preferences of male trainers not to train female student drivers and of failing or refusing to assign

female student drivers to male trainers because of the student drivers' sex, female.

64.     The unlawful employment practices complained of above have deprived, and to tended to deprive, Brookins and a class of presently identified and unidentified female student drivers of equal employment opportunities and otherwise affect their status as job applicants, or in the alternative, employees because of their sex.

65.     The unlawful employment practices complained of above were and are intentional.

66.     The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Brookins and a class of presently identified and unidentified female student drivers.

## COUNT FOUR
## SEX DISCRIMINATION IN COMPENSATION IN VIOLATION OF SECTION 703(a)(1) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(1)
### (Class of Aggrieved Female Job Applicants and Employees)

67.     The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

68.     Since at least January 2021 and continuing to the present, Defendants have engaged in an unlawful pattern or practice of sex discrimination in employment in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting a class of presently identified and unidentified female student drivers to discriminatory compensation, and discrimination otherwise in the terms and conditions of employment, relative to their male counterparts because of their sex, female, through Defendants' policy and practice of failing or refusing to pay/compensate female student drivers awaiting a trainer assignment who indicated a preference to be assigned to a same-sex on-the-road trainer but paying/compensating male student drivers awaiting a trainer assignment who indicated a preference to be assigned to a same-sex on-the-road trainer.

13

69.     The effect of the unlawful employment practices complained of above adversely affects the status of Brookins and a class of presently identified and unidentified female student drivers as job applicants, or in the alternative, employees because of their sex.

70.     The unlawful employment practices complained of above were intentional.

71.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of a class of presently identified and unidentified female student drivers.

## COUNT FIVE
### SEX DISCRIMINATION IN COMPENSATION IN VIOLATION OF SECTION 703(a)(2) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(2)
### (Class of Aggrieved Female Job Applicants and Employees)

72.     The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

73.     Since at least January 2021 and continuing to the present, Defendants have engaged in an unlawful pattern or practice of disparate treatment based on sex in employment in violation of Section 703(a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(2), by subjecting a class of presently identified and unidentified female student drivers to a limitation, segregation, and/or classification because of their sex, female, through Defendants' policy and practice of failing or refusing to pay/compensate female student drivers awaiting a trainer assignment who indicated a preference to be assigned to a same-sex on-the-road trainer but paying/compensating male student drivers awaiting a trainer assignment who indicated a preference to be assigned to a same-sex on-the-road trainer.

74.     The unlawful employment practices complained of above has deprived, and to tended to deprive, a class of presently identified and unidentified female student drivers of equal

14

employment opportunities and otherwise affect their status as job applicants, or in the alternative, employees because of their sex.

75.     The unlawful employment practices complained of above were intentional.

76.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of a class of presently identified and unidentified female student drivers.

**COUNT SIX**
**SEX DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT:**
**SPOUSAL/PARTNER EMPLOYMENT NOTIFICATION PRACTICE IN VIOLATION**
**OF SECTION 703(a)(1) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(1)**
**(Class of Aggrieved Female Job Applicants and Employees)**

77.     The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

78.     Since at least January 2021 and continuing to the present,  Defendants have engaged in an unlawful pattern or practice of sex discrimination in employment in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting a class of presently identified and unidentified female student drivers to discriminatory terms and conditions of employment because of their sex, female, by requiring them to certify as a precondition of receipt of training that they notified their spouse or partner of their willingness to be trained by a male trainer.

79.     The effect of the unlawful employment practices complained of above adversely affects the status of Brookins and a class of presently identified and unidentified female student drivers as job applicants, or in the alternative, employees because of their sex.

80.     The unlawful employment practices complained of above were intentional.

81.     The unlawful employment practices complained above were done with malice or with reckless indifference to the federally protected rights of a class of presently identified and

unidentified female student drivers.

## COUNT SEVEN
## SEX DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT: SPOUSAL/PARTNER EMPLOYMENT NOTIFICATION PRACTICE IN VIOLATION OF SECTION 703(a)(2) OF TITLE VII, 42 U.S.C. § 2000e-2(a)(2)
### (Class of Aggrieved Female Job Applicants and Employees)

82.     The Commission incorporates by reference all allegations set forth in Paragraphs 19 to 51, above.

83.     Since at least January 2021 and continuing to the present,  Defendants have engaged in an unlawful pattern or practice of disparate treatment based on sex in employment in violation of Section 703(a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(2), by subjecting a class of presently identified and unidentified female student drivers to a limitation, segregation, and/or classification because of their sex, female, by requiring them to certify as a precondition of receipt of training that they notified their spouse or partner of their willingness to be trained by a male trainer.

84.     The unlawful employment practices complained of above have deprived, and to tended to deprive, a class of presently identified and unidentified female student drivers of equal employment opportunities and otherwise affect their status as job applicants, or in the alternative, employees because of their sex.

85.     The unlawful employment practices complained of above were intentional.

86.     The unlawful employment practices complained above were done with malice or with reckless indifference to the federally protected rights of a class of presently identified and unidentified female student drivers.

**PRAYER FOR RELIEF**

Wherefore, EEOC respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with them, from denying employment opportunities to Brookins and a class of female job applicants and employees, inclusive of student drivers, because of their sex;

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Brookins and a class of female job applicants and employees, inclusive of student drivers, that eradicate the effects of its past and present unlawful employment practices;

C.      Order Defendants to make whole Brookins and a class of female job applicants and employees, inclusive of student drivers, by providing appropriate back pay with prejudgment interest in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, such as instatement/reinstatement to remedy loss of employment caused by such practices or front pay in lieu thereof;

D.      Order Defendants to make whole Brookins and a class of female job applicants and employees, inclusive of student drivers, by providing compensation for pecuniary and nonpecuniary losses with prejudgment interest, including but not limited to emotional pain, suffering, inconvenience, and loss of enjoyment of life in amounts to be determined at trial;

E.      Order Defendants to pay Brookins and a class of female job applicants and employees, inclusive of student drivers, punitive damages for their malicious or reckless conduct described above in amounts to be determined at trial;

F.      Grant such further relief that is necessary and proper in the public interest; and

G.    Award the Commission its costs in this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

CATHERINE L. ESCHBACH
ACTING GENERAL COUNSEL

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL

131 M STREET, NE
WASHINGTON, D.C. 20507

_____
RONALD L. PHILLIPS
ACTING REGIONAL ATTORNEY

_____
ANN HENRY
ASSISTANT REGIONAL ATTORNEY

_____
BROOKE E. LÓPEZ
SENIOR TRIAL ATTORNEY
TEXAS STATE BAR NO. 24125141

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT OFFICE
207 HOUSTON, 3RD FLOOR
DALLAS, TEXAS 75202
(TEL) (972) 918-3597
(FAX) (214) 253-2749

18