**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 3:26-cv-02590-E** |
| **KLLM TRANSPORT SERVICES LLC** | ) | |
| **and KLLM DRIVING ACADEMY, INC.,** | ) | |
| **Defendants.** | ) | |

**DEFENDANTS KLLM TRANSPORT SERVICES LLC AND KLLM DRIVING ACADEMY, INC.'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendants KLLM Transport Services LLC ("KLLM") and KLLM Driving Academy, Inc. ("KLLM Academy") (collectively, "Defendants") file this Answer and Affirmative Defenses to the Complaint filed by Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC"). Defendants deny that they discriminated against Sonya Brookins ("Brookins") or any other applicant, trainee, or employee because of sex, deny that they engaged in a pattern or practice of unlawful discrimination, and deny that the EEOC is entitled to any relief. Defendants respond to the numbered allegations of the Complaint as follows.

**NATURE OF THE ACTION**

Defendants admit that the EEOC purports to bring this action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991. Defendants deny that they engaged in unlawful employment practices against Brookins or any class of female applicants, trainees, or employees and deny the remaining allegations contained in the unnumbered paragraphs under the heading "Nature of the Action."

## JURISDICTION AND VENUE

**1.** Defendants admit that the Court has subject-matter jurisdiction over claims properly brought by the EEOC under Title VII. Defendants deny any remaining allegations or legal conclusions inconsistent with their defenses stated herein.

**2.** Defendants do not contest venue in this District for purposes of this action. Defendants deny that they committed any unlawful employment practice in this District or elsewhere.

## PARTIES

**3.** Defendants admit that the EEOC is an agency of the United States charged with administering and enforcing certain federal employment-discrimination laws, including Title VII. The remaining allegations state legal conclusions to which no response is required. To the extent a response is required, Defendants deny any allegation inconsistent with the defenses stated herein.

**4.** Defendants admit that KLLM Transport Services LLC is a Mississippi limited liability company that conducts business in Texas and other states. Defendants deny any remaining allegations to the extent inconsistent with this Answer.

**5.** Defendants admit that KLLM Driving Academy, Inc. is a Texas corporation and a wholly owned subsidiary of KLLM Transport Services LLC. Defendants deny that KLLM Driving Academy, Inc. operated the Lancaster, Texas driving academy during the relevant period. The Lancaster academy was operated by an affiliated but separate entity, FFE Transportation Services, Inc. Defendants admit that KLLM Driving Academy, Inc. operated a driving academy in Jackson, Mississippi. Defendants deny any remaining allegations.

**6.** Defendants admit that KLLM Transport Services LLC and KLLM Driving Academy, Inc. are affiliated entities and that KLLM Driving Academy, Inc. is a wholly owned subsidiary of KLLM Transport Services LLC. Defendants further admit that certain administrative services and

management functions are shared between the two entities. Defendants deny the remaining allegations in Paragraph 6, including any allegations inconsistent with the separate corporate existence and respective operations of the named Defendants. Defendants further deny any allegation that FFE Transportation Services, Inc., an affiliated but separate entity that operated the Lancaster, Texas driving academy during the relevant period, was part of a single employer or integrated enterprise with Defendants.

**7.** Admitted.

**8.** Admitted.

**9.** Defendants admit that KLLM Transport Services LLC employed more than 500 employees during the periods relevant to this action.

**10.** Defendants admit that the statutory employee threshold applicable to Title VII is satisfied. Defendants otherwise deny the allegations to the extent they purport to establish liability.

**11.** Defendants admit that they have conducted business in Texas during the relevant period.

**12.** Defendants admit that KLLM is an employer engaged in an industry affecting commerce within the meaning of Title VII. Defendants deny any remaining allegations or legal conclusions inconsistent with this Answer.

**ADMINISTRATIVE PROCEDURES**

**13.** Defendants admit that Brookins filed EEOC Charge No. 450-2022-03841, which she digitally signed on July 2, 2022. Defendants deny the allegation that the Charge was filed on October 21, 2021 and refer to the Charge for its complete contents.

**14.** Defendants admit that the EEOC issued a Determination dated February 19, 2025 containing the findings generally described in Paragraph 14. Defendants vigorously disputed, and

continue to dispute, those findings. Defendants refer to the Determination for its complete contents and deny any characterization suggesting that the EEOC's administrative findings establish liability.

**15.** Defendants admit that they participated in communications with the EEOC concerning conciliation. Defendants deny any allegation that they failed to participate in good faith or refused a reasonable opportunity to resolve the matter and otherwise deny the allegations to the extent they characterize confidential conciliation communications.

**16.** Defendants admit that the parties did not reach a conciliation agreement. Defendants deny any remaining allegations inconsistent with this Answer.

**17.** Defendants admit that the EEOC issued a Notice of Failure of Conciliation dated May 5, 2025. Defendants refer to that document for its complete contents.

**18.** Defendants lack sufficient information at this stage to admit the legal conclusion that every condition precedent applicable to every claim and every person for whom the EEOC seeks relief has been satisfied and therefore deny the allegation. Defendants expressly preserve all defenses concerning the permissible scope of this action, including the temporal scope of the claims and applicable limitations periods, the administrative investigation, notice, conciliation, and relief sought on behalf of persons or concerning practices not properly investigated or subjected to the statutory administrative process.

## STATEMENT OF FACTS

**19.** Denied as stated. During the relevant period, KLLM Driving Academy, Inc. operated a driving academy in Jackson, Mississippi. The Lancaster, Texas academy referenced in the Complaint was operated by FFE Transportation Services, Inc., an affiliated but separate entity that

is not a defendant in this action. Defendants deny that they operated the Lancaster academy and deny any remaining allegations inconsistent with these facts.

**20.** Defendants admit that individuals who successfully completed the classroom portion of the academy could receive or had received conditional offers of employment and could become eligible for over-the-road training. Defendants deny the EEOC's alternative and generalized characterization of every student driver's employment status and deny any remaining allegations.

**21.** Defendants admit that successful completion of over-the-road training was generally required before a student driver could qualify to perform regular solo-driving duties.

**22.** Defendants admit that over-the-road training generally paired a student driver with a qualified trainer and ordinarily lasted approximately six weeks. Defendants deny any remaining allegations.

**23.** Defendants admit that student preference forms were used to assist in trainer assignments. All trainees could request the first available trainer and could express smoking-related preferences. During portions of the relevant period, female trainees were also given the optional ability to request a female trainer. No female trainee was required to select a female trainer or prohibited from accepting an available male trainer. Defendants informed trainees that expressing a preference could affect assignment timing because fewer trainers might satisfy a particular preference. Trainer assignments necessarily depended upon compatibility between available trainers and trainees, including smoking status and smoking preference. Because the pool of non-smoking trainers was smaller than the overall trainer pool, a trainee who requested or required a non-smoking trainer could not properly be compared to a trainee willing to train with a smoking trainer when evaluating assignment timing. Defendants deny the EEOC’s remaining characterizations of the purpose, operation, and legal effect of those forms and practices.

**24.** Defendants deny the allegations in Paragraph 24. Defendants specifically deny that, since January 2021 or at any other time, KLLM maintained a policy or practice of denying compensation to female trainees because of sex while compensating similarly situated male trainees. Eligibility for compensation during a waiting period depended upon individualized circumstances, including whether an otherwise available trainer assignment was declined or unavailable because of a trainee's expressed preferences, including smoking-status and trainer-sex preferences, and not upon the trainee's sex. Defendants further deny that the Commission may establish liability or obtain individualized relief based upon discrete compensation decisions occurring outside the applicable statutory limitations period merely by characterizing such decisions as part of an alleged continuing pattern or practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002).**25.** Denied. Defendants deny that similarly situated male and female trainees were compensated differently because of sex.

**26.** Defendants admit that a version of a student preference form contained language asking a female student willing to train with a male trainer to certify that she had notified her spouse or significant other. Defendants deny that completion of the certification was a mandatory condition of training or assignment and deny the remaining allegations and characterizations.

**27.** Denied. The certification was not mandatory, was not actively enforced, and a trainee's failure to provide the certification did not prevent or delay a trainer assignment.

**28.** Denied.

**29.** Defendants admit that, during a portion of the relevant period, the form did not contain comparable language directed to male student drivers. Defendants deny that the language constituted an unlawful term, condition, limitation, or classification of employment or caused any adverse employment action.

**30.** Defendants admit that trainers could express preferences relevant to trainer assignments, including preferences concerning smoking status and, during portions of the relevant period, sex. Defendants deny any remaining allegations or characterizations inconsistent with this Answer.

**31.** Defendants admit that trainer and student preferences were among the information available to personnel responsible for making trainer assignments. Defendants deny that assignments were made unlawfully because of sex. A trainee's stated trainer sex preference was only one of several compatibility variables considered in an assignment, including smoking status, trainer and trainee location, route, availability, and other operational considerations.

**32.** Defendants deny that they maintained or implemented an unlawful policy or practice of making assignments because of sex. Defendants admit that trainer preferences were among numerous considerations relevant to assignments during portions of the relevant period but deny the remaining allegations and legal characterizations.

**33.** Defendants deny that they maintained an unlawful policy or practice of refusing to assign female student drivers to male trainers because the students were female.

**34.** Defendants admit that a majority of over-the-road trainers during relevant periods were male.

**35.** Defendants admit that over-the-road training ordinarily involved the trainer and student traveling in a tractor equipped with sleeper-berth accommodations and that separate hotel accommodations generally were not provided absent circumstances such as a vehicle breakdown. Defendants deny any remaining allegations or characterizations.

**36.** Denied.

**37.** Denied.

**38.** Denied. Defendants deny that female trainees were categorically placed into a smaller trainer pool or required to wait for female trainers. Female trainees retained the ability to accept the first available trainer. Assignment timing depended upon numerous individualized and operational factors unrelated to sex, including smoking preference, trainer location and freight route, trainee location and availability, travel restrictions, and acceptance or rejection of proposed assignments.

**39.** Defendants admit that compensation applicable during over-the-road training differed from compensation available to qualified solo drivers. Defendants deny any implication that the difference was unlawful.

**40.** Defendants admit that Brookins completed classroom driver training in Lancaster, Texas on or about October 28, 2021. Defendants deny that the Lancaster academy was operated by either Defendant and deny the remaining allegations to the extent they characterize Brookins's classroom training as having been provided by Defendants. Defendants admit that Brookins thereafter became eligible for over-the-road training through KLLM pursuant to a conditional offer of employment, to the extent established by the applicable records.

**41.** Defendants deny that Brookins expressed no smoking-status preference. Although Brookins checked "1st Available," she expressly qualified that selection by handwriting "preferably not chain smoker" in the smoking-preference section of her Preference Sheet. KLLM did not classify trainers as "chain smokers" and "non-chain smokers;" trainers were classified as smokers or non-smokers. Because "chain smoker" is inherently subjective and not an administrable trainer classification, KLLM reasonably treated Brookins's qualification as a preference for a non-smoking trainer. The first two trainers available to Brookins's class were

smokers, and KLLM thereafter matched Brookins with the first available compatible non-smoking trainer.

**42.** Defendants admit that Brookins communicated with a student-support representative concerning her trainer assignment. Defendants deny any remaining allegations.

**43.** Defendants admit that Brookins communicated concerning the status of her assignment and refer to the communications themselves for their complete contents and context. Defendants deny any characterization inconsistent with those communications.

**44.** Defendants admit that certain male trainees who completed classroom training at approximately the same time as Brookins received trainer assignments before she did. Defendants deny that those individuals were similarly situated to Brookins in all material respects. The male trainees identified by Brookins were smokers and therefore were eligible for assignment to smoking trainers who were not compatible with Brookins's expressed preference. Accordingly, differences in their assignment timing cannot establish that sex caused Brookins's wait. Defendants deny that any difference in assignment timing resulted from Brookins's sex.

**45.** Defendants admit that Brookins was offered an assignment with a male trainer scheduled to meet her in Atlanta, Georgia, on or about November 29, 2021. The November 29 assignment was to a male, non-smoking trainer, further demonstrating that KLLM was not restricting Brookins to female trainers. Defendants deny any implication that the location or timing of that assignment resulted from Brookins's sex. KLLM offered Brookins transportation consistent with its normal practices, which Brookins declined.

**46.** Defendants admit that communications occurred between Brookins and a student-support representative concerning trainer availability and refer to the actual communications for their complete contents and context. Defendants deny that isolated statements establish that

Brookins's assignment was delayed because of sex or that Defendants engaged in unlawful discrimination.

**47.** Defendants admit that Candilyn McMillan became eligible for assignment to an over-the-road trainer on or about November 18, 2021. Defendants further admit that McMillan was a non-smoker. McMillan's Preference Sheet has not been located, and Defendants therefore deny that the Commission can accurately characterize the preferences reflected on that document. KLLM's records establish, however, that smoking compatibility was a relevant consideration in McMillan's trainer assignment and that she ultimately was matched with a non-smoking trainer. Defendants deny any remaining allegations in Paragraph 47.

**48.** Defendants deny the allegations in Paragraph 48 as stated. Although McMillan's Preference Sheet has not been located, KLLM's records establish that McMillan was a non-smoker and was ultimately matched with David Bradley, who was likewise a non-smoker. Trainer assignments depended upon the availability of a compatible trainer and numerous individualized considerations, including smoking compatibility, trainer availability, trainer location and route, and other operational considerations. Defendants deny that McMillan's sex caused any delay in her trainer assignment.

**49.** Defendants deny the allegations in Paragraph 49 as stated. Defendants admit that, during a portion of the relevant period, KLLM's Preference Sheet included an acknowledgment concerning assignment of certain female trainees to male trainers and notification of a spouse or significant other. Defendants specifically deny that spousal consent was a mandatory prerequisite to McMillan's receipt of a trainer assignment. Defendants deny that this acknowledgment prohibited McMillan or any other female trainee from being assigned to a male trainer, and further deny that it caused any delay in McMillan's assignment. McMillan was in fact assigned to David

Bradley, a male trainer. Defendants further deny that the challenged practice continued to the present; KLLM subsequently modified the practice so that comparable considerations applied without regard to the trainee's sex. Defendants otherwise deny the allegations in Paragraph 49.

**50.** Defendants deny the allegations in Paragraph 50. McMillan was a non-smoker and was matched with a non-smoking trainer. The availability of trainers compatible with a trainee's smoking status or preference materially affected the pool of trainers available for assignment, as did trainer availability, location, route, and other operational considerations. Accordingly, male trainees cannot properly be considered similarly situated to McMillan merely because they became eligible for over-the-road training at approximately the same time. The Commission does not allege, among other things, that the male trainees to whom it compares McMillan had materially equivalent smoking-status requirements or otherwise had access to the same pool of compatible trainers. Defendants deny that any difference in assignment timing was because of McMillan's sex.

**51.** Defendants deny the allegations in Paragraph 51 as stated. McMillan became eligible for trainer assignment on or about November 18, 2021 and was offered and assigned to David Bradley on December 3, 2021, approximately fifteen days later. McMillan departed for training with Bradley on December 4, 2021. Both McMillan and Bradley were non-smokers. Contrary to any suggestion that McMillan suffered a loss of compensation while awaiting assignment, KLLM's records establish that she was paid during the entirety of the approximately fifteen-day waiting period. Bradley was McMillan's only over-the-road trainer; she successfully completed her training, upgraded, and subsequently teamed with her husband on or about January 24, 2022. Defendants deny that McMillan's trainer assignment or compensation was adversely affected because of her sex.

## COUNT ONE

### Alleged Sex Discrimination Against Sonya Brookins

**52.** Defendants incorporate their responses to Paragraphs 19 through 51 as though fully set forth herein.

**53.** Denied. Brookins's trainer assignment was not delayed because of her sex. Defendants specifically deny that differences in trainer-assignment timing establish discrimination based upon sex. The pool of trainers available to any particular trainee varied based upon individualized compatibility and operational factors, including smoking status and smoking preference, trainer-sex preference where applicable, trainer availability, location, freight route, transportation requirements, trainee availability, and whether a proposed assignment was accepted. Trainees subject to materially different assignment criteria were not similarly situated merely because they became eligible for over-the-road training at approximately the same time. Brookins expressed a smoking-related preference that KLLM reasonably treated as a preference for a non-smoking trainer, and KLLM thereafter offered her an assignment with a male, non-smoking trainer. KLLM likewise matched McMillan, a non-smoker, with a non-smoking, male trainer.

**54.** Defendants deny the allegations in Paragraph 54 and specifically deny that KLLM maintained or engaged in a pattern or practice of discriminating against female trainees in trainer assignments. Defendants further deny that aggregate differences in assignment timing, without accounting for the individualized compatibility and operational factors described above, establish that sex caused any difference in assignment timing.

**55.** Denied. Defendants deny that they intentionally discriminated against Brookins because of sex.

**56.** Denied. Defendants deny that they acted with malice or reckless indifference to Brookins's federally protected rights.

**COUNT TWO**

**Alleged Sex Discrimination in Training Assignments Under § 703(a)(1)**

**57.** Defendants incorporate their responses to Paragraphs 19 through 56 as though fully set forth herein.

**58.** Defendants deny the allegations in Paragraph 58 and deny that they discriminated against Brookins, McMillan, or any other female trainee because of sex with respect to trainer assignments. Trainer assignment was an individualized process dependent upon numerous legitimate considerations, including smoking compatibility, trainer and trainee preferences, trainer availability and location, freight routes, transportation considerations, trainee availability, and acceptance of proposed assignments. A trainee who required or requested a non-smoking trainer, for example, did not have access to the same trainer pool as a trainee willing to train with a smoking trainer. Accordingly, differences in assignment timing between male and female trainees do not establish sex discrimination absent consideration of these material variables. Defendants further deny that the Commission may establish liability or obtain individualized relief based upon discrete trainer-assignment decisions occurring outside the applicable statutory limitations period merely by characterizing separate assignment decisions as part of a continuing pattern or practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002).

**59.** Denied.

**60.** Denied.

**61.** Denied.

## COUNT THREE

### Alleged Sex Discrimination in Training Assignments Under § 703(a)(2)

**62.** Defendants incorporate their responses to Paragraphs 19 through 61.

**63.** Defendants deny the allegations in Paragraph 63 and specifically deny that KLLM engaged in a pattern or practice of discriminating against female trainees in trainer assignments. The Commission's theory improperly treats sex as the determinative assignment variable while disregarding other material criteria that affected the pool of trainers available to each trainee. Smoking compatibility is particularly significant. The available trainer pool for a non-smoking trainee seeking or requiring a non-smoking trainer was materially different from the pool available to a trainee willing to train with a smoker. Brookins and McMillan were both non-smokers who were matched with non-smoking trainers. Defendants deny that trainees with materially different trainer-compatibility requirements are similarly situated for purposes of determining whether sex caused differences in assignment timing. Defendants further deny that the Commission may establish liability or obtain individualized relief based upon discrete trainer-assignment decisions occurring outside the applicable statutory limitations period merely by characterizing separate assignment decisions as part of a continuing pattern or practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002).

**64.** Denied.

**65.** Denied.

**66.** Denied.

## COUNT FOUR

### Alleged Sex Discrimination in Compensation Under § 703(a)(1)

**67.** Defendants incorporate their responses to Paragraphs 19 through 66.

**68.** Defendants deny the allegations in Paragraph 68 and deny that KLLM discriminated against female trainees with respect to compensation. Eligibility for compensation during a waiting period was not determined by sex. To the extent compensation could be affected when a trainee elected to wait for an assignment satisfying a particular preference despite the availability of another assignment, that principle applied to trainee preferences and assignment circumstances rather than sex. The individualized nature of the inquiry is demonstrated by McMillan, whom the Commission identifies as an allegedly aggrieved female trainee but who was paid throughout the entirety of her approximately fifteen-day wait for a compatible trainer. Defendants deny that Brookins, McMillan, or any other trainee received less compensation because of sex.

**69.** Denied.

**70.** Denied.

**71.** Denied.

## COUNT FIVE

### Alleged Sex Discrimination in Compensation Under § 703(a)(2)

**72.** Defendants incorporate their responses to Paragraphs 19 through 71.

**73.** Defendants deny the allegations in Paragraph 73 and specifically deny that KLLM maintained a pattern or practice of compensating female trainees less favorably than similarly situated male trainees because of sex. Whether a trainee was compensated while awaiting assignment depended upon individualized circumstances, including whether a compatible trainer was available, whether the trainee had expressed assignment preferences, and whether an available assignment was declined. The Commission's own allegations concerning McMillan do not establish a classwide compensation injury because KLLM's records establish that McMillan was paid throughout her waiting period. Defendants further deny that the Commission may establish

liability or obtain individualized relief based upon discrete decisions occurring outside the applicable statutory limitations period merely by characterizing separate compensation decisions as part of a continuing pattern or practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002).

**74.** Denied.

**75.** Denied.

**76.** Denied.

**COUNT SIX**

**Alleged Sex Discrimination Concerning Spousal/Partner Notification Under § 703(a)(1)**

**77.** Defendants incorporate their responses to Paragraphs 19 through 76.

**78.** Defendants deny the allegations in Paragraph 78 as stated. Defendants admit that during a portion of the relevant period KLLM used an acknowledgment addressing notification of a spouse or significant other in connection with certain opposite-sex trainer assignments. Defendants specifically deny that spousal consent was a mandatory prerequisite to a trainee's receipt of a trainer assignment. Defendants also deny that the acknowledgment prohibited female trainees from training with male trainers or that it caused the discriminatory assignment delays alleged by the Commission. Defendants further specifically deny that the challenged sex-specific practice continued to the present. KLLM modified the practice years before the filing of this action so that comparable considerations applied without regard to the trainee's sex.

**79.** Denied.

**80.** Denied.

**81.** Denied.

**COUNT SEVEN**

**Alleged Sex Discrimination Concerning Spousal/Partner Notification Under § 703(a)(2)**

**82.** Defendants incorporate their responses to Paragraphs 19 through 81.

**83.** Defendants deny the allegations in Paragraph 83 and deny that KLLM maintained a pattern or practice of discriminating against female trainees based upon any spouse or significant-other notification requirement. Defendants further deny the Commission's allegation that the challenged sex-specific practice continued to the present and affirmatively state that the practice was modified years before this action was filed.

**84.** Denied.

**85.** Denied.

**86.** Denied.

**AFFIRMATIVE AND OTHER DEFENSES**

Without assuming any burden they do not otherwise bear, and expressly reserving the right to amend or supplement these defenses as discovery proceeds, Defendants assert the following affirmative and other defenses:

**First Defense — Failure to Establish Unlawful Discrimination**

The EEOC cannot establish that Defendants discriminated against Brookins or any other applicant, trainee, or employee because of sex or otherwise violated Title VII.

**Second Defense — Legitimate, Nondiscriminatory Reasons**

Any employment, assignment, compensation, or training decision challenged in this action was made for legitimate, nondiscriminatory reasons, including trainer availability, smoking preference, location, freight route, trainee availability, travel considerations, acceptance or

rejection of an available assignment, operational requirements, and other legitimate individualized circumstances.

**Third Defense — No Pattern or Practice of Discrimination**

Defendants did not maintain a mandatory same-sex training policy. Female trainees were not categorically restricted to female trainers and remained free to accept the first available trainer. Any decision by an individual female trainee to wait for a female trainer was voluntary and does not establish that Defendants maintained a pattern or practice of intentional sex discrimination.

**Fourth Defense — Lack of Causation**

The EEOC cannot establish that sex caused any alleged delay, denial of compensation, lost employment opportunity, or other injury for which it seeks relief. Assignment timing and compensation were affected by numerous individualized factors unrelated to sex.

**Fifth Defense — Brookins's Individual Claim**

Brookins did not request a female trainer and was not restricted to training with a female trainer. Defendants offered Brookins multiple trainer assignments, including an assignment with a male trainer. Any initial difference in assignment timing resulted from her stated smoking preference, and subsequent delays resulted from her refusal or inability to accept offered assignments and other circumstances unrelated to sex.

**Sixth Defense — Failure to Mitigate and Avoidable Consequences**

Any recovery of back pay, front pay, compensatory damages, or other make-whole relief must be barred or reduced to the extent Brookins or any alleged aggrieved individual failed to exercise reasonable diligence to mitigate damages, declined available training or employment opportunities, imposed restrictions on availability, withdrew from training, failed to accept available assignments, or otherwise failed reasonably to avoid or reduce the alleged loss.

**Seventh Defense — Individualized Circumstances and Lack of Classwide Causation**

The EEOC's proposed class allegations improperly aggregate individuals whose trainer-assignment timing, availability, compensation, and employment outcomes were affected by materially different circumstances. Individualized factors—including smoking preference, trainer location and route, trainee location, travel restrictions, temporary unavailability, assignment refusals, family circumstances, withdrawal from training, and other operational considerations—preclude any assumption that differences in wait time or compensation were caused by sex.

**Eighth Defense — Improper or Overbroad Scope of Relief**

The EEOC may recover relief only for persons and practices properly within the permissible scope of the administrative charge, investigation, reasonable-cause determination, statutory notice, and conciliation process. Defendants reserve all defenses concerning individuals, practices, geographic locations, time periods, theories, and remedies that were not properly subjected to the administrative process required by Title VII.

**Ninth Defense — Conditions Precedent**

To the extent the EEOC seeks relief concerning claims, practices, individuals, locations, or time periods for which applicable statutory conditions precedent were not satisfied, such claims or relief are barred or limited.

**Tenth Defense — Laches and Unreasonable Delay**

The EEOC's claims and requested equitable relief are barred or limited, in whole or in part, by laches and unreasonable delay to the extent Defendants establish material prejudice resulting from the length of the administrative investigation and the approximately fifteen-month period between the Notice of Failure of Conciliation and commencement of this action, including faded

memories, personnel changes, evolving policies, and increased difficulty reconstructing historical assignment decisions and practices.

**Eleventh Defense — Limitations on Back Pay and Other Monetary Relief**

Any award of back pay, compensatory damages, punitive damages, or other monetary relief is subject to all applicable statutory limitations, temporal restrictions, offsets, exclusions, and caps. No individual may recover compensation for periods during which she was unavailable for work, declined an available assignment, voluntarily withdrew, failed to mitigate damages, or experienced delay for reasons unrelated to sex.

**Twelfth Defense — Offset, Credit, and Setoff**

Any monetary award must be reduced by all compensation previously paid, interim earnings, amounts that could have been earned through reasonable mitigation, and any other applicable offsets, credits, or setoffs.

**Thirteenth Defense — No Malice or Reckless Indifference**

Defendants did not act with malice or reckless indifference to any person's federally protected rights. Defendants maintained equal-employment-opportunity policies, participated extensively in the EEOC's investigation and conciliation process, evaluated and modified practices over time, and acted in good faith based upon legitimate operational, privacy, safety, and trainee-choice considerations. The EEOC therefore is not entitled to punitive damages.

**Fourteenth Defense — Good Faith**

Defendants acted in good faith and with a reasonable belief that their policies and practices complied with applicable law. Defendants' practices were intended, among other things, to provide trainees with additional choice and flexibility in selecting trainers, accommodate individual trainee

preferences, and address the unique circumstances associated with extended over-the-road training in shared tractor sleeping quarters.

**Fifteenth Defense — Trainee Choice and Legitimate Privacy and Safety Considerations**

Defendants did not impose a same-sex training requirement or restrict male or female trainees to trainers of the same sex. Rather, during portions of the relevant period, Defendants permitted trainees to express a voluntary preference concerning the sex of a trainer in recognition of legitimate privacy and safety considerations associated with extended over-the-road training, during which a trainer and trainee may share confined living and sleeping quarters for weeks at a time. A trainee's expression of such a preference did not itself restrict the trainee to trainers of that sex or prevent Defendants from identifying or offering an otherwise available trainer of the opposite sex. To the extent the EEOC establishes that sex was considered in any particular assignment decision, Defendants preserve all defenses available under Title VII, including the bona fide occupational qualification defense and defenses based upon legitimate privacy and safety considerations.

**Sixteenth Defense — No Adverse Employment Action or Cognizable Injury**

Certain challenged practices, including the former spouse/significant-other notification language, did not result in the denial or delay of a trainer assignment, compensation, employment, or any other cognizable injury to particular individuals. Relief is unavailable absent proof that an allegedly unlawful practice caused an actionable injury.

**Seventeenth Defense — Mootness and Prospective Injunctive Relief**

The EEOC is not entitled to prospective injunctive relief concerning practices that Defendants discontinued or materially revised before this action was filed absent evidence satisfying the requirements for such extraordinary prospective relief. Among other things, the

spouse-notification practice was modified, and trainer-preference and compensation practices changed during the administrative period.

**Eighteenth Defense — Equitable Relief Must Be Tailored to Proven Violations**

Any equitable relief must be narrowly tailored to remedy violations actually proven and may not impose unnecessary, punitive, perpetual, or unrelated restrictions upon Defendants' lawful business operations.

**Nineteenth Defense — Failure to Establish Membership in an Aggrieved Class**

The EEOC bears the burden of establishing that each person for whom individualized relief is sought was actually affected by an unlawful employment practice. Female trainees whose delays resulted from smoking preferences, assignment refusals, travel limitations, unavailability, family circumstances, withdrawal from the program, or other causes unrelated to sex are not entitled to relief merely because they experienced a longer assignment wait.

**Twentieth Defense — No Entitlement to Duplicative Recovery**

The EEOC and any alleged aggrieved persons may not obtain duplicative, overlapping, or double recovery for the same alleged injury.

**Twenty-First Defense — Voluntary Trainee Election**

To the extent the EEOC seeks relief based upon delays associated with a female trainee’s request for a female trainer, such request was a voluntary preference selected by the trainee and was not imposed by Defendants. No female trainee was required to request or wait for a female trainer, and the EEOC cannot attribute all consequences of an individual trainee’s voluntary preference to unlawful discrimination by Defendants.

**Twenty-Second Defense — Statute of Limitations**

The Commission's claims and requested relief are barred, in whole or in part, by the applicable limitations period. Under Title VII, a charge must be filed within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). A discrete discriminatory act occurs on the date the challenged employment decision is made, and each discrete act starts a separate limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002). Discrete acts occurring outside the applicable limitations period are not actionable even when they are related to timely acts or are alleged to form part of an ongoing discriminatory practice. *Id.* at 113–15.

The employment actions challenged by the Commission—including individual trainer-assignment decisions and decisions concerning a trainee's eligibility for or continuation of waiting-period compensation—constitute discrete employment actions occurring on identifiable dates. The Commission cannot avoid the statutory limitations period by aggregating such separate employment decisions and characterizing them as a continuing pattern or practice. *See id.*; *EEOC v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 523–25 (S.D. Tex. 2012). Accordingly, to the extent the Commission seeks liability or individualized relief based upon discrete employment actions occurring more than 300 days before the filing of the administrative Charge giving rise to this action, such claims and relief are time-barred. Furthermore, conduct predating the limitations period does not independently support liability or individualized relief for a time-barred discrete employment action. *Morgan*, 536 U.S. at 113.

**Twenty-Third Defense — Reservation of Additional Defenses**

Discovery has not begun, and the EEOC seeks relief for presently unidentified individuals based upon alleged practices extending over multiple years. Defendants therefore reserve the right

to amend this Answer to assert additional defenses revealed through discovery, investigation, expert analysis, or further development of the factual and legal record.

**RESPONSE TO PRAYER FOR RELIEF**

Defendants deny that the EEOC is entitled to any of the relief requested in Paragraphs A through G of its Prayer for Relief, including injunctive relief, back pay, prejudgment interest, compensatory damages, punitive damages, or other monetary or equitable relief. Defendants deny that the Commission or any allegedly aggrieved individual is entitled to individualized relief for persons who did not suffer an adverse action because of sex, whose circumstances are not materially comparable to those alleged in the Complaint, or whose claims or requested relief fall outside the applicable statutory or administrative scope of this action.

Defendants request that the Court enter judgment in their favor and against the EEOC; dismiss the EEOC's claims with prejudice; deny all relief requested by the EEOC; award Defendants their recoverable costs and such other relief as may be authorized by law; and grant Defendants all other relief, at law or in equity, to which they may be entitled.

**JURY DEMAND**

Defendants demand a trial by jury on all issues so triable.

Respectfully submitted,

Amy E. Davis
State Bar No. 24007083

Law Center Of Amy E. Davis PR, LLC
151 Calle de San Francisco
Ste. 200, PMB 1263
San Juan, PR 00901
214-838-3501
adavis@cdfirm.com

***ATTORNEYS FOR DEFENDANTS***
***KLLM TRANSPORT SERVICES LLC AND***
***KLLM DRIVING ACADEMY, INC.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this, the 4th day of September, 2026, she served on all counsel of record the foregoing document by ECF filing.

*/s/ Amy E. Davis*
Amy E. Davis